UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WHY ASAP, LLC, | Civil Action No. 04-1984(NLH) |
| Plaintiff, | |
| v. | |
| COMPACT POWER, | |
| Defendant. | |
| JUMPIT AS, | Consolidated with Civil Action No. 05-1964(NLH) |
| Plaintiff Counter Defendant, | |
| v. | **OPINION** |
| WHY ASAP, LLC and BARRY BOOKMAN, | |
| Defendants Counter Claimants. | |

**APPEARANCES:**

Donald Clark Simpson, Esquire
126 Borton Landing Road
Moorestown, NJ 08057-3055

    *Attorney for WHY ASAP, LLC and Barry Bookman*

James V. Marks, Esquire
Holland & Knight LLP
195 Broadway
New York, NY 10007-3189

    *Attorney for JUMPIT AS*

James P. Flynn, Esquire
Epstein, Becker & Green, PC
Two Gateway Center
12th Floor
Newark, NJ 07102-5003

    *Attorney for Compact Power*

**HILLMAN**, District Judge

Presently before the Court is WHY ASAP, LLC's motion to amend its counterclaim against Jumpit AS [Docket No. 41]. Also before the Court is Jumpit AS's motion to dismiss all of its claims of infringement against WHY ASAP, LLC and to dismiss WHY ASAP, LLC's declaratory judgment counterclaim against Jumpit AS [Docket No. 42]. For the reasons expressed below, both parties' motions will be granted.

## BACKGROUND

This is a consolidated matter concerning United States Patent Number 6,709,784 ("'784 patent") entitled "Back-Up Battery for a Cellular Telephone." Jumpit AS ("Jumpit") filed suit against WHY ASAP, LLC ("WHY ASAP") and Barry Bookman alleging that their Flash Cellular Power device has infringed and is infringing on Jumpit's patent. WHY ASAP and Bookman filed a counterclaim seeking a declaratory judgment that (1) they have not infringed, and are not infringing, on the '784 patent, (2) the patent is invalid, (3) the patent is unenforceable by reason of inequitable conduct, and (4) that the case is exceptional under 35 U.S.C. § 285 and warrants the award of attorneys fees.

In a separate action, WHY ASAP filed suit against Compact Power, which manufacturers the product CELLBOOST pursuant to Jumpit's '784 patent. WHY ASAP claims that Compact Power has interfered with its business by contacting its customers and

advising them that its product was infringing on the '784 patent.

WHY ASAP has moved to amend its counterclaim against Jumpit to include counts for "false description and/or representation," "unfair competition and unfair trade practices," "harassment," and "fraud, inequitable conduct and/or violation of duty of disclosure." Jumpit opposes WHY ASAP's motion on the basis that these amendments would be futile because they fail to state a claim upon which relief may be granted and would fail to survive a motion to dismiss based on the Noerr-Pennington doctrine.

Concurrently, Jumpit has moved to voluntarily dismiss its infringement claims against WHY ASAP and to dismiss WHY ASAP's original counterclaim for declaratory relief. No motion has necessitated the participation of Compact Power, but the resolution of the pending motions could affect WHY ASAP's suit against Compact Power, which has explained the potential effect in informal correspondence to the Court.

## **DISCUSSION**

Jumpit contends that WHY ASAP's claims would not survive a motion to dismiss because WHY ASAP's claims are bald, unsupported conclusory statements that do not invoke the "sham exception" to the Noerr-Pennington doctrine. Because WHY ASAP's claims would not survive a motion to dismiss, Jumpit argues that WHY ASAP should not be permitted to amend its counterclaim to assert additional claims against Jumpit since the amendments would be futile.

3

Amendments to pleadings are governed by Federal Civil Procedure Rule 15, which provides that leave to file an amended pleading "shall be freely given as justice so requires." Fed. R. Civ. P. 15(a). The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities. Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989). An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, Jumpit invokes the Noerr-Pennington doctrine to support its claim that WHY ASAP's amendments are futile and, as such, should not be permitted. The Noerr-Pennington doctrine generally provides immunity from antitrust liability to those who petition the government for redress. Mine Workers v. Pennington, 381 U.S. 657, 670 (1965). This immunity serves to protect "from the Sherman [Antitrust] Act a concerted effort to influence public officials regardless of intent or purpose." Id.

Lawsuits are ordinarily protected activity under Noerr-Pennington, but the Supreme Court has established a "sham exception." See Professional Real Estate Investors, Inc. v. Columbia Pictures Industry, Inc., 508 U.S. 49, 51 (1993). A

4

lawsuit "does not qualify for . . . immunity if it 'is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor.'"  Id. (quoting Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961)).  In the Third Circuit, the Noerr-Pennington immunity has been extended to tort claims based on New Jersey state law.  Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 128 (3d Cir. 1999) (citation omitted) ("We are persuaded that the same First Amendment principles on which Noerr-Pennington immunity is based apply to the New Jersey tort claims.").

Based on this premise, Jumpit argues that WHY ASAP cannot show that Jumpit's infringement suit against WHY ASAP is a "sham," and, thus, Jumpit is immune from liability on WHY ASAP's counterclaims.  In order to determine whether Jumpit's suit against WHY ASAP is a sham, WHY ASAP must demonstrate that (1) Jumpit's lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits[;]" and (2) the lawsuit conceals "an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental *process*-as opposed to the outcome of that process-as an anticompetitive weapon[.]"  Professional Real Estate, 508 U.S. at 60-61 (emphasis in original) (other citations omitted).

5

The "objectively baseless" standard in the first prong of the test is analogized to the concept of "probable cause as understood and applied in the commonlaw tort of wrongful civil proceedings[.]" Id. at 62. "Probable cause to institute civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication[.]" Id. (citation omitted). Thus, the first prong of the test, with its emphasis on the reasonable litigant, is concerned with the objective merits of the lawsuit at issue. In order to overcome Noerr-Pennington immunity, WHY ASAP must demonstrate that Jumpit could not have held a reasonable belief that there is a chance that a claim may be held valid upon adjudication.

In contrast to the first prong, the second part of the test concerns Jumpit's subjective motivation for filing suit. A court may reach the second prong, however, only if Jumpit's suit has been found to be objectively meritless. See Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 123 (3d Cir. 1999).

Jumpit's futility argument to defeat WHY ASAP's request to amend its counterclaim relies on the motion to dismiss standard. As a result, the Court must determine whether the first prong is met by taking as true all facts alleged in WHY ASAP's proposed amended counterclaims. Complicating the analysis, however, is Jumpit's concurrent motion to withdraw its infringement complaint against WHY ASAP. Without any infringement suit against WHY

6

ASAP, the Noerr-Pennington doctrine would be inapplicable because there would be no patent infringement lawsuit that implicates it.

In its motion to dismiss its own claims with prejudice against WHY ASAP, Jumpit states that it has "unconditionally agreed" on the record not to sue WHY ASAP, Bookman, or their customers "for any past, present, or future infringement" of the '784 patent.  Jumpit also seeks the dismissal of WHY ASAP's counterclaim, arguing that without its claims, there is no judicable controversy for WHY ASAP's counterclaim.

WHY ASAP opposes Jumpit's motion for two reasons.  First, WHY ASAP opposes the dismissal of its existing counterclaim against Jumpit.  Second, WHY ASAP argues that Jumpit's promise not to sue WHY ASAP does not adequately compensate WHY ASAP for the damages it sustained because of Jumpit's threatened and actual litigation.

Under certain circumstances, a plaintiff must seek leave of the court in order for its action to be dismissed.  Federal Civil Procedure Rule 41(a)(2) requires a plaintiff to obtain court approval to dismiss its action when a "counterclaim has been pleaded by a defendant" prior to the service of the plaintiff's motion to dismiss.  The action cannot be dismissed over the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.  Fed. R. Civ. P. 41(a)(2).

7

A declaratory judgment counterclaim may only be brought to resolve an actual controversy between interested parties. <u>SL Waber, Inc. v. American Power Conversion Corp.</u>, 135 F. Supp. 2d 521, 524 (D.N.J. 1999) (citing <u>Super Sack Mfg. Corp. v. Chase Packaging Corp.</u>, 57 F.3d 1054, 1058 (Fed. Cir. 1995), <u>cert. denied</u>, 516 U.S. 1093 (1996) (quoting 28 U.S.C. § 2201(a))). "The existence of a sufficiently concrete dispute between the parties remains . . . a jurisdictional predicate to the vitality of such an action; [i]deed, an actual controversy must be extant at all stages of review, not merely at the time the [counterclaim] is filed." <u>Id.</u> (citing <u>Super Sack</u>, 57 F.3d at 1058) (other citations and quotations omitted).

The United States Court of Appeals for the Federal Circuit has developed a two-part inquiry to determine whether there is an actual controversy in a suit requesting a declaration of patent non-infringement or invalidity. "There must be both (1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken with the intent to conduct such activity." <u>Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.</u>, 395 F.3d 1324, 1332 (Fed. Cir. 2005) (citations omitted). "The purpose of the two-part test is to determine

8

whether the need for judicial attention is real and immediate, in which case the federal courts have jurisdiction, or whether it is prospective and uncertain of occurrence, in which case they do not." Super Sack, 57 F.3d at 1058 (citations omitted).

In the case where a patentee defending against an action for a declaratory judgment has covenanted not to sue an alleged infringer for any past or present acts, the covenant divests the court of jurisdiction of the case. Super Sack, 57 F.3d at 1058. The covenant not to sue removes the "reasonable apprehension" of a suit and resolves the actual controversy between the parties. See id. As a result, the court no longer has Article III jurisdiction to hear a declaratory judgment action regarding the validity or enforceability of that patent. See id.

For example, in Super Sack, at the close of discovery, a patentee plaintiff provided the alleged infringer defendant with an unconditional covenant not to sue for any past and present acts, and moved to dismiss the defendant's declaration of non-infringement counterclaim against it. Id. at 1055-56. The court dismissed the counterclaim, explaining that because the defendant did not have a reasonable apprehension that it would face an infringement suit due to the patentee's covenant not to sue, it failed to satisfy the first part of the Federal Circuit's two-part test of justiciability. Id. at 1059; see also SL Waber, Inc., 135 F. Supp. 2d at 524 (following Super Sack and dismissing

9

defendant's declaratory judgment counterclaim following patentee's covenant not to sue because it eliminated the defendant's concern about the threat of litigation for any past, present or future acts involving the patent).[1]

Here, Jumpit covenanted not to sue WHY ASAP, Bookman, and their customers for any past, present or future infringement of the '784 patent. Under the reasoning of Super Sack, WHY ASAP's counterclaim for a declaration that it did not infringe on the '784 patent and that the patent is invalid must be dismissed because the covenant not to sue removes WHY ASAP's "reasonable apprehension" of a suit. Indeed, WHY ASAP has no apprehension of suit even for future acts, a promise which the court in Super Sack did not require to be included in a covenant in order to remove the "reasonable apprehension" of a suit. See Super Sack,

---

[1] WHY ASAP urges the Court to not apply Super Sack and instead follow Cardinal Chemical Co. v. Morton International, Inc., 508 U.S. 83 (1993), arguing that the case provides an independent jurisdictional basis for a counterclaim seeking a declaratory judgment of patent invalidity under the circumstances of this case. Super Sack addressed the same argument and explained, "a claim for declaratory judgment of invalidity is independent of the patentee's charge of infringement in the following-and only the following-way: an affirmed finding of noninfringement does not, without more, justify a reviewing court's refusal to reach the trial court's conclusion on invalidity," and noted that "*Cardinal*, addressed to the propriety of appellate jurisdiction over final judgments respecting infringement and validity, simply does not apply" in cases where "the trial court neither made a finding on infringement nor reached a conclusion on validity." Super Sack, 57 F.3d at 1060. Because there has been no finding on infringement of the patent or its validity, Cardinal is inapplicable.

135 F. Supp. 2d at 524 (stating contrary to the alleged infringer's argument, "[t]he residual possibility of a future infringement suit based on [the alleged infringer's] future acts is simply too speculative as a basis for jurisdiction over [the alleged infringer's] counterclaim for declaratory judgments of invalidity"). Consequently, because WHY ASAP does not have a reasonable apprehension of a suit by Jumpit, there is no actual controversy between the parties. As a result, the Court does not have Article III jurisdiction to hear WHY ASAP's declaratory judgment action regarding the validity or enforceability of the '784 patent.[2]

Following the analysis in Super Sack, WHY ASAP's claim for a declaratory judgment that WHY ASAP and Bookman did not infringe on the '784 patent, and that the '784 patent is invalid, must be dismissed because of Jumpit's covenant not to sue.[3] WHY ASAP's

---

[2]Jumpit has not signed or filed a covenant not to sue; rather, it has asserted its covenant in its submissions in support of its motion to dismiss. The court in Super Sack faced the same issue. The patentee asserted its promise not to sue as a statement of counsel in motion papers and briefs, and the alleged infringer argued that it still had a reasonable apprehension of suit as a result. Super Sack, 57 F.3d at 1059. The court rejected the alleged infringer's argument, stating that the patentee was "forever estopped by its counsel's statement of nonliability . . . from asserting liability against [the alleged infringer]. . . . This estoppel, in turn, removes from the field any controversy sufficiently actual to confer jurisdiction over this case." Id.

[3]With regard to WHY ASAP's concern that Jumpit's patent may not be valid because of prior art, even though WHY ASAP cannot challenge the validity of the patent in this proceeding, 35

proposed amended counterclaims that seek relief other than its requested declaratory relief may proceed, however, if Jumpit's promise not to sue has not resolved the actual controversy between the parties for those other claims, and if those claims withstand Jumpit's other challenges.

To continue the above analysis on Jumpit's opposition to WHY ASAP's motion to amend its counterclaim to include additional claims, because there is no longer any patent infringement lawsuit, the Noerr-Pennington doctrine, which is the primary basis for Jumpit's opposition, is inapplicable. Thus, WHY ASAP's request to file amended counterclaims will not be denied under this theory.

Intermingled with its Noerr-Pennington doctrine argument, Jumpit has also argued generally that the counterclaims--"false description and/or representation," "unfair competition and unfair trade practices," "harassment," and "fraud, inequitable conduct and/or violation of duty of disclosure"--are futile

---

U.S.C. §§ 301 and 302 provide a mechanism by which "[a]ny person at any time may cite to the Office in writing prior art consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent," or "file a request for reexamination Office of any claim of a patent on the basis of any prior art." These procedures are available even when the parties have agreed not to bring a suit challenging a patent. See Joy Mfg. Co. v. National Mine Service Co., Inc., 810 F.2d 1127, 1129-30 (Fed. Cir. 1987). Thus, even after the dismissal of their declaratory judgment counterclaim, WHY ASAP and Bookman have an avenue available to seek redress for their concern over the validity of Jumpit's patent.

because they are unsupported, conclusory allegations that could not survive a motion to dismiss.  Jumpit, however, has not specifically argued how those allegations fail to state a claim.  The defendant bears the burden of showing that no claim has been presented, Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005), and Jumpit has not met this burden in its opposition to WHY ASAP's motion to amend its counterclaim.  Consequently, leave to amend its counterclaim will be given to WHY ASAP as required by Fed. R. Civ. P. 15, and Jumpit may file a fully briefed motion to dismiss at that time if it so desires.[4]

    The final issue presented by Jumpit's and WHY ASAP's motions is their effect on WHY ASAP's action against Compact Power.  Because none of the motions required Compact Power's participation, Compact Power informally addressed how various resolutions to the pending motions would affect WHY ASAP's claims against it.  Compact Power's letters to the Court were speculative, however, since they were submitted prior to the Court's ruling on the motions.  Therefore, following the entry of the Court's Opinion and Order, Compact Power may also file a

---

    [4]The Court recognizes that it is peculiar for Jumpit to remain in the action solely as a counter defendant.  It would be judicially inefficient, however, to deny the amendment of WHY ASAP's counterclaims so that it could re-file its claims against Jumpit in order for WHY ASAP to be deemed "plaintiff" rather than "counter claimant" and Jumpit to be deemed "defendant" rather than "counter defendant."  The maintenance of WHY ASAP's counterclaims in Jumpit's original action effects the same result without unnecessary procedural permutations.

13

fully briefed motion addressing its arguments if it so desires.

## CONCLUSION

For the reasons expressed above, Jumpit's claims against WHY ASAP, and WHY ASAP's counterclaim for declaratory judgment, must be dismissed. WHY ASAP will be permitted to file its amended counterclaims. An appropriate Order will issue.


Dated: November 13, 2006           s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.